UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ZACHARY O. SMITH,

    Petitioner,

v.                                    Case No.:  2:23-cv-1032-SPC-KCD

SECRETARY, DEPARTMENT OF
CORRECTIONS,

    Respondent.
                                 /

## **OPINION AND ORDER**

Before the court is Petitioner Zachary O. Smith's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1). Smith challenges his conviction and 31-year prison sentence for lewd or lascivious battery, trafficking in cocaine, and possession of marijuana.

## **Background**

On May 31, 2007, the State of Florida charged Smith with (1) unlawfully engaging in sexual activity with T.M., a person older than 12 but less than 16 years old, (2) possessing 28 or more grams of cocaine, and (3) possessing no more than 20 grams of cannabis.  (Doc. 20-1 at 22).  Attorney Robert Hagaman represented Smith.

At trial, T.M. testified she was 15 years old on April 27, 2007, when she had a fight with her mother and left their apartment.  She encountered

Smith—a stranger who lived at the apartment complex—and asked to borrow his cell phone. T.M. went into Smith's apartment to make some calls. She then went into Smith's bedroom to use his bathroom, and Smith followed into the bedroom. T.M. saw people come in to buy drugs, and she agreed to help Smith package some cocaine. (*Id.* at 160-66).

Smith was smoking marijuana, and he gave T.M. a drink with orange juice that made her dizzy. Smith took T.M.'s clothes off, even though she did not want him to. Smith put on a condom and penetrated T.M.'s vagina with his penis, despite T.M.'s efforts to push him off her. (*Id.* at 168-69).

T.M. was afraid to leave the apartment because Smith threatened to hurt her and her mom. Smith eventually went outside, and T.M. was able to send a text to her mom, grandma, and aunt from Smith's phone. The police called Smith's phone, and T.M. called the number back and followed an officer's instructions to get out of Smith's apartment. Officers met T.M. outside the apartment, and T.M. told them about the drugs under Smith's bed. (*Id.* at 170-73)

The officers went to Smith's apartment, and Smith consented to a search. The officers found small, individually wrapped envelopes filled with cocaine under Smith's mattress. The cocaine weighed more than 28 grams. Police also found a marijuana blunt in Smith's right rear pants pocket. (*Id.* at 195-203).

After waiving his *Miranda* rights, Smith told Collier County Sheriff's Office investigator Scott Walters that T.M. came into his apartment, and they went into his bedroom around 3 or 4 a.m. He stated they slept in his bedroom—T.M. dressed in her clothes and Smith in boxers and a T-shirt. Smith told Walters that T.M. claimed to be 18 years old, but Smith was skeptical based on their conversations. Smith denied having sex with T.M. but said he hugged her and thought about having sex with her. (*Id.* at 241-45).

The jury found Smith guilty on all counts. (*Id.* at 321). The trial court sentenced Smith to consecutive prison terms of fifteen years for count 1, fifteen years for count 2, and one year for count 3. (*Id.* at 327-36). Smith appealed, and the Second District Court of Appeal of Florida (2nd DCA) affirmed without a written opinion. (*Id.* at 390). Smith filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, (*Id.* at 394-447), which he amended twice (*Id.* at 459-543; *Id.* at 681-790). The postconviction court held a hearing on Smith's first ground for postconviction relief. (*Id.* at 832-986). The postconviction court ultimately denied Smith's Rule 3.850 motion. (*Id.* at 988-996). Smith appealed, and the 2nd DCA affirmed on all grounds except the summary denial of Smith's claims alleging ineffective assistance of counsel for failing to impeach the victim's testimony. (*Id.* at 1122-23).

On remand, Smith moved to discharge his postconviction counsel, James Chandler. (*Id.* at 1198-1204). The postconviction court denied the motion.

3

(Doc. 20-2 at 21). The court then held a hearing on the remanded claims. (*Id.* at 24-183). The court denied the claims and discharged Smith's postconviction counsel. (*Id.* at 226-85). While the remanded grounds were pending, Smith filed a petition for a writ of mandamus against the clerk for failing to provide the document he requested. (*Id.* at 207-11). The court denied the request because the requested documents did not exist. (*Id.* at 287-90).

Smith also filed supplemental Rule 3.580 claims. (*Id.* at 190-93 and 220-24). The postconviction court ordered the state to respond but ultimately denied the supplemental claims. (*Id.* at 386-388). The 2nd DCA affirmed denial of the supplemental claims without a written opinion. (*Id.* at 654). The 2nd DCA allowed Smith to file a belated appeal of the remanded claims, (*Id.* at 654), and transferred the case to the 6th District Court of Appeal of Florida, (*Id.* at 751). The 6th DCA affirmed without a written opinion. (*Id.* at 1145). Smith then timely filed his federal habeas petition.

## Applicable Habeas Law

### A. AEPDA

The Antiterrorism Effective Death Penalty Act (AEDPA) governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

4

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). A state court's violation of state law is not enough to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. *White*, 134 S. Ct. at 1702; *Casey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

5

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton,* 544 U.S. 133, 134 (2005); *Bottoson v. Moore,* 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson,* 234 F.3d at 531 (quoting *Williams,* 529 U.S. at 406).

When reviewing a claim under 28 U.S.C. § 2254(d), a federal court must remember that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow,* 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter,* 562 U.S. 86, 101 (2011). "[T]his standard is difficult to meet because it was meant to be." *Sexton v. Beaudreaux,* 138 S. Ct. 2555, 2558 (2018).

### B. Exhaustion and Procedural Default

AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of relief available under state law. Failure to exhaust occurs "when a petitioner has not 'fairly presented' every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Pope v. Sec'y for Dep't. of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).

Procedural defaults generally arise in two ways:

> (1) where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred; or (2) where the petitioner never raised the claim in state court, and it is obvious that the state court would hold it to be procedurally barred if it were raised now.

*Cortes v. Gladish*, 216 F. App'x 897, 899 (11th Cir. 2007). A federal habeas court may consider a procedurally barred claim if (1) petitioner shows "adequate cause and actual prejudice," or (2) if "the failure to consider the claim would result in a fundamental miscarriage of justice." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991)).

### C. Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person may have relief for ineffective assistance of counsel. 466 U.S. 668, 687-88 (1984). A petitioner must establish: (1) counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Id.*

When considering the first prong, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Sealey v. Warden*, 954 F.3d 1338, 1354 (11th Cir. 2020) (quoting *Strickland*, 466 U.S. at 689). And "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020) (quoting *Richter*, 562 U.S. at 101). Thus, a habeas petitioner must "show that no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." *Id.* This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The second prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

8

of the proceeding would have been different." *Sealey*, 954 F.3d at 1355 (quoting *Strickand*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The critical question on federal habeas review is not whether this Court can see a substantial likelihood of a different result had defense counsel taken a different approach. *Mays v. Hines,* 141 S. Ct. 1145, 1149 (2021). All that matters is whether the state court, "notwithstanding its substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." *Id.* (quoting *Knowles v. Mirazayance,* 556 U.S. 111, 123 (2009)).

"An ineffective-assistance claim can be decided on either the deficiency or prejudice prong." *Sealey,* 954 F.3d at 1355. And "[w]hile the *Strickland* standard is itself hard to meet, 'establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.'" *Id.* (quoting *Richter,* 562 U.S. at 105).

### Analysis

#### A. Grounds 1 and 2: Trial counsel failed to impeach the victim with inconsistent statements and her probationary status

In his first ground, Smith identifies several statements T.M. made to investigators that were inconsistent with her trial testimony, and he argues Hagaman should have used those statements to impeach T.M. Smith also

9

mentions witnesses Hagaman decided not to call to testify. In Ground 2, Smith argues Hagaman should have impeached T.M. with evidence that she was on probation. Smith raised these claims in his Rule 3.850 motion, and the state postconviction court summarily denied them. (Doc. 20-1 at 992). The 2nd DCA reversed and remanded for an evidentiary hearing. (*Id.* at 1123).

At the hearing, Smith testified that Hagaman failed to investigate T.M.'s probationary status. He argued it could have been used to establish that T.M. had a motive to lie because she might have gotten into trouble for running away from home, smoking weed and drinking alcohol with Smith, and staying out past curfew. Smith also testified that Hagaman should have impeached T.M. with evidence that (1) T.M. reported to officers at the scene that Smith penetrated her with his finger but did not report sexual intercourse, (2) T.M. gave inconsistent statements regarding whether a second person raped her, (3) T.M. stated four times that Smith did not rape her, (4) T.M. made inconsistent statements about when specific events occurred, and (5) T.M. did not mention a scar on Smith's chest or a noticeable birthmark when asked if he had any distinguishing marks on his body. Smith also claimed Hagaman failed to investigate witnesses Smith proposed calling to testify at trial. (Doc. 20-2 at 42-86).

Forensic interviewer Dale Lively testified that T.M. reported being raped by Smith and a second person and stated that Smith did not have any unusual

10

body markings.  (*Id.* at 102-09).  Corporal William Lang testified that he spoke to T.M. after she left Smith's apartment, and she claimed she was held in Smith's apartment against her will and was inappropriately touched.  Lang asked T.M. if she was hurt, and "she said she was sore down there, indicating between her legs."  Lang explained that he did not ask T.M. about the extent of the abuse because "that's what the investigators are for, and we don't like to speak to underage victims more than necessary."  (*Id.* at 113-19).

The State called Hagaman to the stand to address the alleged deficiencies.  He testified that the witnesses Smith suggested—Emmit Moran and Fonatte Jones—had contact with T.M. the day before the crime.  Hagaman explained they would have nothing to add because they were not at the apartment at the time of the offense and would not be able to refute T.M.'s testimony.  Hagaman did not recall questioning T.M. about her failure to identify any unusual markings on Smith's body, but a review of the trial transcript revealed that he did ask her about it.  Hagaman testified that he reviewed T.M.'s forensic interview with Smith, and that they discussed the probation issue.  Hagaman determined that asking T.M. about her probationary status would not have helped the defense because he had no admissible evidence or documents with which to impeach her.  (*Id.* at 146-54).

Hagaman went on to explain his strategic decision not to try to impeach T.M. without solid impeachment evidence.  He explained that in his

11

experience, juries do not forgive unsuccessful attempts to impeach a child victim. Smith had made statements to the police and allowed them to search his apartment, which gave the State ample evidence of the drugs. T.M.'s credibility was bolstered by the drug information and the detailed description she gave of Smith's apartment. (*Id.* at 154-55). On cross-examination, Hagaman testified he did not believe T.M.'s inconsistent statements were sufficient to successfully impeach her, but they would have opened the door to other damaging evidence. (*Id.* at 160-62).

The state postconviction court rejected Smith's claims of ineffective assistance of counsel:

> 17. In light of the testimony given at the evidentiary hearing by the five witnesses called to testify, the Court finds that Defendant's testimony given at the evidentiary hearing lacks credibility. Furthermore, even if the assertions made by Defendant were true and, even if trial counsel were to be found ineffective with regard to failing to investigate the victim, and using that evidence to impeach her for bias, the Court finds that the outcome of the trial would not have been different. At the trial, the victim's testimony would have been no different and no evidence offered by Defendant in relation to the claims asserted in these grounds would have affected her trial testimony.
>
> 18. In addition, defense counsel could not impeach the victim as to her probationary status at the time of the offense because it would have been improper. Based upon Defendant's motion, the victim was never under a belief that her probation could have been violated over her conduct at the time the incident occurred. It is necessary to show that the prosecution witness is aware of the investigation in order to demonstrate the witness has a motive to curry favor with the prosecution. *See Breedlove v. State*, 580 So. 2d 605 (Fla. 1991). Accordingly, the Defendant has failed to

>  demonstrate both prongs of the *Strickland* standard, deficient performance and prejudice[.]

(Doc. 20-2 at 231-32).

The state postconviction court reasonably applied *Strickland*. Hagaman's testimony established that he conducted a thorough investigation of the relevant facts. He knew the testimony Smith's proposed witnesses could give, he was familiar with the evidence of T.M.'s statements to investigators, and he understood the inconsistencies in her statements. Under the *Strickland* standard, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690-91. Hagaman made reasonable strategic decisions on when and how to try to impeach T.M.

As for Ground 2, Hagaman determined he did not have admissible evidence of T.M.'s probationary status that could be used for impeachment. The state court agreed and explained why such an attempt to impeach would have been improper under state law. Federal habeas courts "must defer to the state's construction of its own law" when an attorney's alleged failure turns on state law. *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)). Such deference is especially important when considering *Strickland* claims because they can "drag federal courts into resolving questions of state law." *Shinn v. Kayer*, 141

13

S. Ct. 517, 523 (2020). The Court thus accepts the postconviction court's holding that Hagaman could not have impeached T.M. with her probationary status.

The state postconviction court correctly found that Hagaman was not deficient under *Strickland*. Grounds 1 and 2 are denied.

### B. Grounds 3, 5 and 6: The postconviction court violated Smith's due process rights

In Ground 3, Smith argues the postconviction court violated his due process rights by denying him access to T.M.'s probationary file. Smith wanted to confront Hagaman with the file at the evidentiary hearing. In Ground 5, Smith claims the postconviction court failed to conduct a *Richardson*[1] hearing on an alleged discovery violation. And in Ground 6, Smith faults the court for failing to hold a *Nelson*[2] and *Farreta*[3] hearing on Smith's request to discharge his postconviction counsel.

"Federal habeas relief is available to remedy defects in a defendant's conviction and sentence, but 'an alleged defect in a collateral proceeding does not state a basis for habeas relief.'" *Alston v. Dep't of Corr., Fla.*, 610 F.3d 1318,

---

[1] *Richardson v. State*, 246 So. 2d 771 (Fla. 1971) (holding that a trial court must inquire into an allegation that the State failed to comply with discovery rules and determine whether any noncompliance prejudiced the defendant).
[2] *Nelson v. State*, 274 So. 2d 256 (4th Dist Ct. App. Fla. 1973) (establishing the procedure for trial courts to consider a criminal defendant's request to discharge court appointed counsel).
[3] *Farreta v. California*, 422 U.S. 806 (1975) (holding that a state criminal defendant has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so).

14

1325 (11th Cir. 2010) (quoting *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004)). That is because "a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—*i.e.*, the conviction itself—and thus habeas relief is not an appropriate remedy." *Id.* at 1325-26 (quoting *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009)).

Grounds 3, 5, and 6 of Smith's petition attack the integrity of his state postconviction proceedings, not his conviction. They cannot justify federal habeas relief, and they are denied.

### C. Ground 4: The evidence at trial was insufficient to support a conviction

Finally, Smith argues the State failed to prove he possessed cocaine because T.M. was not qualified to identify cocaine by sight. Smith did not exhaust this ground in state court. While he challenged the sufficiency of the evidence on direct appeal, his argument centered on possession of cocaine, not the existence of cocaine. In fact, his appeal brief acknowledged "the State proved that Mr. Smith's apartment contained cocaine[.]" (Doc. 20-1 at 371). Because Smith did not present this argument on direct appeal, it is unexhausted. And because the time to appeal has passed, it is procedurally defaulted and denied.

**DENIAL OF CERTIFICATE OF APPEALABILITY**

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282 (2004) (*quoting Slack v. McDaniel,* 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller–El v. Cockrell,* 537 U.S. 322, 335–36 (2003) (citations omitted). Smith has not made the requisite showing here and may not have a certificate of appealability on his Petition.

Accordingly, it is now

**ORDERED:**

Petitioner Zachary O. Smith's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on February 6, 2025.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record